(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
BRIAN JACKSON, et al.,              :
                                    :
        Plaintiffs,                 :   Civil No. 04-2223 (RBK)
                                    :
    v.                              :   **OPINION**
                                    :
OCEAN CITY BOARD OF                 :
EDUCATION, et al.,                  :
                                    :
        Defendants.                 :
_____ :

**KUGLER**, United States District Judge:

Presently before the Court are cross-motions for summary judgment by plaintiffs Brian Jackson ("Brian") and Brian's parents, Christopher and Delores Jackson (collectively "Plaintiffs") and defendants Ocean City Board of Education (the "District"), Suzanne Taresevich and Nancy Purcell (collectively "Defendants"), seeking review of the decision rendered by Administrative Law Judge W. Todd Miller ("Judge Miller"). For the reasons set forth below, this Court will deny Defendants' motion and grant in part and deny in part Plaintiffs' motion.

I.      BACKGROUND

Brian was born on November 26, 1984. He attended elementary and middle school, through eighth grade, in the Upper Township School District. Beginning in second grade, Brian

1

was classified as "perceptually impaired" and was therefore eligible for special education under the Individuals with Disabilities Education Act ("IDEA"). Throughout his time at Upper Township, Brian received in-class support as well as resource room instruction related to his reading difficulties.

Brian attended Ocean City High School ("OCHS") beginning in the ninth grade, or the 1999-2000 school year. He remained at OCHS for three years. For each of these years, Brian was classified as having a specific learning disability.[1] The parties differ on assessing Brian's intelligence level, but agree that he was of average to above-average intelligence. Throughout his three years at OCHS, Dr. Nancy Purcell ("Purcell") was assigned as Brian's case manager.

On July 17, 2002, Brian's parents notified the Ocean City School District (the "District") that they were unilaterally removing Brian from OCHS and placing him at the Forman School, a residential school located in Connecticut. On August 1, 2002, Plaintiffs filed a due process petition against the District. Brian attended the Forman school for two years, as he repeated the eleventh grade. After completing his education, Brian enrolled at Dean College in the fall of 2004.

A.   Brian's Experience at OCHS

Before beginning ninth grade, Brian's parents and representatives from OCHS met to create a transitional individual education plan ("IEP") for Brian. The final version of this IEP contained in-class support in some of his classes, but did not include resource center instruction.

---

[1] A "specific learning disability" is defined as "a disorder in one or more of the basic psychological processes involved in understanding or using language, spoken or written, that may manifest itself in an imperfect ability to listen, think, speak, read, write, spell, or to do mathematical calculations . . . ." N.J.A.C. 6A:14-3.5(c)(12).

This IEP "mainstreamed" Brian by having his full academic schedule consist of classes with other students who did not possess learning disabilities. Throughout his ninth and tenth grade years, Brian was enrolled in non-college preparatory courses. Brian's parents initially received progress reports on Brian every six weeks, though these updates were changed to become bi-weekly. Brian passed all of his classes in both ninth grade and tenth grade. Although Brian received grades of D, D-plus, and D-minus in three of his courses during ninth grade, his grades in tenth grade consisted of grades solely in the B and C range. In eleventh grade, Brian was enrolled in two college-preparatory classes. Brian did not receive in-class support in these classes, and performed quite poorly in these classes.

    B.    <u>Judge Miller's Decision</u>

Judge Miller presided over the due process hearing requested by Plaintiffs. Plaintiffs requested a finding that the District had not provided Brian with a Free Appropriate Public Education ("FAPE") for the 1999-2000, 2000-01, and 2001-02 school years, that the District had not provided meaningful transition services to promote Brian's movement to OCHS, and that the Forman School was an appropriate placement. Plaintiffs requested that the district compensate them for the years in which Brian was not provided a FAPE and reimburse them for the costs associated with enrolling Brian at the Forman school and for the costs of the independent education evaluation performed on Brian.

In his decision, Judge Miller found that Brian received a FAPE during his ninth and tenth grade years, but did not receive one during his eleventh grade year at OCHS. Judge Miller further found that Plaintiffs had justified Brian's unilateral placement at the Forman School, but subjected this finding to equitable considerations. Accordingly, Judge Miller concluded that

3

compensation for the costs associated with one year of placement at the Forman School was an appropriate remedy, along with Plaintiffs' request for costs and fees.

## II.    STANDARD

### A.    IDEA and FAPE

The IDEA obliges states in receipt of federal funding under the statute to guarantee a FAPE to all children with disabilities.  20 U.S.C. § 1412(a)(1)(A).  The IDEA instructs states to develop a detailed instructional plan, known as an IEP, for every disabled child. 20 U.S.C. § 1412(a)(4).  The IEP is specially designed for each child, consisting of "a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services."  Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 589-90 (3d Cir. 2000) (citing 20 U.S.C. § 1401(a)(20)).

In defining the contours of FAPE, the Supreme Court explained that the disabled child is entitled to "such services as are necessary to permit the child 'to benefit' from the instruction." Bd. of Educ. v. Rowley, 458 U.S. 176, 188-189 (1982).  The IEP must provide a "'basic floor of opportunity,' but not necessarily 'the optimal level of services.'"  Holmes, 205 F.3d at 589-90 (quoting Carlisle Area Sch. v. Scott P., 62 F.3d 520, 533-34 (3d Cir. 1995)).  However, "although the state is not required to 'maximize the potential of handicapped children,' . . . a satisfactory IEP must provide 'significant learning' and confer 'meaningful benefit.'"  T.R. v. Kingwood Twp. Bd. Of Educ., 205 F.3d 572, 577 (3d Cir. 2000) (noting that the Third Circuit rejected as inadequate the "more than trivial or de minimis" standard of Polk v. Central Susquehanna Interm. Unit 16, 853 F.2d 171, 180-85 (3d Cir. 1988)).

Further, the IDEA requires that students who fall under the provisions of the IDEA are to be educated in the "least restrictive environment." ("LRE") 20 U.S.C. § 1412(a)(5)(A). Where possible, this requirement leads to "mainstreaming" disabled students by educating them side-by-side non-disabled students. Accordingly, the Third Circuit has "interpreted this mandate to require that a disabled child be placed in the least restrictive environment . . . that will provide him with a meaningful educational benefit." T.R., 205 F.3d at 578. Defined further, "[t]he least restrictive environment is one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." Carlisle Area Sch. v. Scott P., 62 F.3d 520, 535 (3d Cir. 1995).

The burden of establishing the inadequacy of a proposed IEP rests on the challenging party, typically the parents of the disabled child. Schaffer v. Weast, 546 U.S. 49 (2005); L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 391 (3d Cir. 2006).

    B.    <u>Review of an ALJ's Decision</u>

In reviewing an administrative determination in an IDEA case, "the District Court applies a modified version of de novo review." Id. at 389 (citing S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 269-70 (3d Cir. 2003)). While "the District Court must make its own findings by a preponderance of the evidence," the court "must also afford 'due weight' to the ALJ's determination." Shore Reg'l High School Bd. of Educ. v. P.S. ex rel. P.S., 381 F.3d 194, 199 (3d Cir. 2004) (citing 20 U.S.C. § 1415(1)(2)(B)(iii); Rowley, 458 U.S. at 206). Thus, "[f]actual findings from the administrative proceedings are to be considered prima facie correct," and where the ALJ has heard live testimony and made determinations of credibility, "that

5

determination is due special weight." Shore Reg'l, 381 F.3d at 199 (citing S.H., 336 F.3d at 271). Furthermore, "[i]f a reviewing court fails to adhere to [the ALJ's findings], it is obliged to explain why." Shore Reg'l, 381 F.3d at 199.

**III.   ANALYSIS**

    A.   FAPE

Judge Miller found that Brian had a received a FAPE during the 1999-2000 and 2000-01 school years at OCHS, but did not receive one during the 2001-02 school year. Both parties contest this finding. Specifically, Plaintiffs ask this Court to find that Brian was deprived of a FAPE for all years at OCHS, while the District asks this Court to find that Brian received a FAPE during all three school years.

No shortage of thought or deliberation went into Judge Miller's findings. Judge Miller heard testimony from numerous witnesses and was presented with a plethora of exhibits. His decision provides a thorough overview of the testimony offered before him along with an insightful and thoughtful analysis of the facts and expert opinions offered by all parties in this matter.

        1.   The 1999-2000 and 2000-01 School Years

Regarding Brian's first two years at OCHS, Judge Miller found that Brian received a meaningful education benefit. He noted that Brian's grades showed that he passed mainstream classes and attached relevance to this fact. See Rowley, 458 U.S. at 203 (holding that when children are in mainstreamed classes, "[r]egular examinations are administered, grades are awarded, and yearly advancement to higher grade levels is permitted for those children who

attain an adequate knowledge of the course material. The grading and advancement system thus constitutes an important factor in determining educational benefit."). Judge Miller also heard testimony from, among other witnesses, Purcell, Brian's case manager at OCHS, and Dr. Edna Barenbaum ("Barenbaum"), an expert hired by Plaintiffs. Both Purcell and Barenbaum were considered to be expert witnesses. Not surprisingly, each offered a different perspective as to the progress that Brian made during his time at OCHS and the suitability of the District's support for Brian. Purcell and Barenbaum's opinions also differed based on their reliance on different tests administered to Brian and the suitability of comparing Brian's performance on one type of test to his performance on a different test.

Ultimately, Judge Miller concluded that Brian's "ninth and tenth-grade educational progress was more than trivial, but certainly not exemplary or maximized." (Op. at 81.) Accordingly, Judge Miller held that Brian was provided a FAPE during these two years. Plaintiffs take issue with this finding based on several reasons.

First, Plaintiffs assert that Judge Miller applied an incorrect standard in reaching this determination; as is noted above, in order for a FAPE to be provided, the appropriate standard is not "more than trivial," but rather "providing significant learning and meaningful educational benefit." However, in the context of Judge Miller's opinion, it is clear to this Court that Judge Miller understood the correct standard. Judge Miller properly notes the correct standard earlier in his opinion and cites Ridgewood for this assertion. (Op. at 76.) Plaintiffs are correct is stating that at times in his Opinion Judge Miller cited not to this standard, but rather the more lenient one expressed in Polk. However, this Court is confident that Judge Miller's findings were made in accordance with the correct standard as expressed by the Third Circuit in Ridgewood.

Alternatively, this Court notes that it finds Judge Miller's findings to meet the standard of requiring the District to provide Brian "significant learning and meaningful educational benefit."

Plaintiffs further contend that Judge Miller erred by using grades as a metric for determining that Brian had demonstrated progress during his first two years at OCHS. This argument ties in to Plaintiffs' assertion that the program put in place for Brian simply accommodated his disability and did not attempt to remediate or to actually improve Brian's skill sets in deficient areas such as reading comprehension. Plaintiffs argue that Brian's grades resulted from these accommodations, and the fact that he was able to pass mainstream classes as such was not indicative of either the suitability of these classes or the nature of any progress being made by Brian in deficient areas.

Plaintiffs, however, fail to adequately address the District's responsibility to educate Brian in the least restrictive environment. Plaintiffs claim that the District "invokes the least restrictive environment mantle to excuse this abject failure [to provide Brian a FAPE.]" (Pls.' Reply Br. at 5.) Plaintiffs further note that "IDEA requires that disabled students be educated in the least restrictive *appropriate* educational environment. (Id.) (quoting Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 249 (3d Cir. 1999)). Whether a fully-mainstreamed classroom setting was the *most* appropriate setting for Brian, however, is immaterial under the IDEA. Rather, Judge Miller found, and this Court agrees, that such a setting was in fact appropriate insofar as it allowed Brian to receive a meaningful education.

Along these lines, Plaintiffs ultimately dispute Judge Miller's assessment that Brian did receive a meaningful educational benefit during these two years. Plaintiffs assert that Judge Miller's determination that Brian progressed during these two years is not substantiated.

However, as this Court has concluded, Judge Miller reached this conclusion by looking at both written evidence and expert testimony that was often contradictory. The experts offered by the different parties appeared to be at odds with each other, and the tests performed on Brian were dissimilar to the point that the experts disagreed over whether a comparison between the different tests was meaningful or not. As is proper under such circumstances, this Court affords "special weight" to these conclusions reached by Judge Miller. This Court finds nothing in the record to suggest that his conclusions in such a regard were factually incorrect. Accordingly, based on the detailed findings presented by Judge Miller, this Court concurs that OCHS educated Brian in the least restrictive appropriate environment that offered him a FAPE.

      Plaintiffs present further arguments as to why the District violated the requirements of the IDEA. Plaintiffs claim that Brian's ninth- and tenth-grade IEPs called for resource center instruction, but none was provided. Plaintiffs further claim that the IEPs did not provide measurable goals and objectives. Finally, Plaintiffs assert that Judge Miller made no findings as to whether the District provided adequate services for transition after Brian finished high school.

      Addressing these concerns individually, this Court first looks to Plaintiffs' assertion that Brian was not provided the resource center instruction mandated in his ninth- and tenth-grade IEPs. Brian's ninth-grade IEP mentions such instruction only insofar as considerations for further transition services are needed, specifically with regard to his "Functional Vocation Evaluation." (Ex. R-7 at 6.) Indeed, Plaintiffs cite only to this language in making their assertion. (Pls.' Br. at 50.) This instruction, by all accounts, was not part of Brian's proposed education as set forth in either this IEP or his IEP for tenth grade (Ex. R-15.) Accordingly, Plaintiffs' assertion that this instruction was deemed to be a vital component of Brian's IEPs is

not justified.

Next, this Court addressed Plaintiffs' argument that the IEPs in question failed to provide measurable goals and objectives. Plaintiffs claim that these IEPs contain only "cookie cutter" language which fails to set forth goals that could measure whether the supplemental instruction afforded Brian was successful. Plaintiffs claim that these IEPs fail to set forth "a statement of measurable annual goals, including academic and functional goals . . ." as required under the IDEA. 20 U.S.C. § 1414(d)(1)(A)(i)(II). Plaintiffs' assertion does not appear to be correct. Brian's IEPs do indeed set forth goals, both academic and functional, both specific and broad. Judge Miller noted that these "IEPs could have contained more clear and measurable goals and objectives." (Op. at 81.) This Court agrees, but concurs with Judge Miller in finding that the goals in the IEP, along with the grades issued by teachers in mainstreamed classes and the frequent progress reports sent home to Brian's parents allowed Brian, his parents, and the District to track Brian's progress with respect to not only his grades, but other functional goals as well, such as an increased understanding of concepts like editing, paragraph organization, proofreading, and main ideas. (Ex R-7 at 13.) While some of these goals were not meant to be assessed quantitatively, the fact that they invoke qualitative assessments does not render them invalid or immeasurable.

Finally, Plaintiffs claim that the District failed to provide meaningful transition services to Brian in preparing him for his post high school career, as required under the IDEA. 20 U.S.C. § 1414(d)(1)(A)(vii)(1). Again, this assertion is not supported by the factual record. Brian's ninth- and tenth-grade IEPs make reference to such transitional questions. Specifically, Brian was given the COPS (presumably the Career Occupational Preference System examination) in

May of 2000 and found to have an interest in the business sector. Brian's tenth-grade IEP notes possible career professions for Brian in this area and notes that his courseload, combined with a development of study skills, will provide Brian with the skills to transition to a post-secondary environment. (Ex. R-15 at 5.) The District's argument, focusing on the IEP implemented during Brian's third year at OCHS, is inapplicable in determining the validity of his educational experience during his first two years at OCHS.

Accordingly, based on this analysis, and lending special weight to Judge Miller's assessment of the testimony presented before him, this Court concurs that the District met its obligation of providing Brian a FAPE during the 1999-2000 and 2000-01 school years. While this Court notes that the District by no means appeared to maximize Brian's potential, it certainly provided him with an educational experience that was meaningful and beneficial, thus meeting the requirements of the IDEA.

        2.      <u>The 2001-02 School Year</u>

In his decision, Judge Miller held that Brian was denied a FAPE for the 2001-02 school year. Judge Miller found that the District's approach to educating Brian was suited for non-college-preparatory classes. However, in 2001-02, Brian was enrolled in two college-preparatory classes. Brian attended these classes with no in-class support. Further, Judge Miller found that the burden was placed on Brian to seek help for these classes. Judge Miller noted that while in ninth and tenth grades Brian's class load and support were sufficient, in eleventh grade he was placed in more difficult classes and given less support on which to rely. Judge Miller noted that Brian required support, especially in the most difficult classes. Accordingly, Judge Miller found that the District's plan for Brian's eleventh grade year was a "formula for failure." (Op. at 82.)

11

The District claims that Judge Miller erred by engaging in an analysis using only the benefits of hindsight. Specifically, it claims that Judge Miller's finding that Brian was denied a FAPE was based solely on the fact that Brian did not succeed in his more difficult classes. The District notes that such an analysis is improper; rather, a proper analysis questions whether the decisions were proper at the time they were made.

The District is correct in its portrayal of the applicable analysis. See Carlisle, 62 F.3d at 530 ("[A]ppropriateness is judged prospectively so that any lack of progress under a particular IEP, assuming arguendo that there was no progress, does not render that IEP inappropriate."). However, this Court does not agree with the District's contention that Judge Miller's decision engaged in any form of retrospective analysis. Rather, Judge Miller found that Brian's eleventh grade experience and corresponding IEP were "not designed to provide meaningful educational benefit under the IDEA." (Op. at 82.) This Court agrees. The District decreased Brian's support mechanisms while increasing the difficulty of his academic courseload. Moreover, these changes occurred without any documented reasoning as to why they would benefit Brian. On the contrary, Judge Miller noted Purcell's disagreement with the decision to place Brian in these classes in the first place, and did so only at the request of Brian's parents. Despite this request, however, as Judge Miller noted, "the district was in a better position to appreciate the severity of [Brian's] deficits." (Op. at 80.) That the District would place Brian in such classes while decreasing his support was accurately characterized by Judge Miller as "inappropriate." (Id.) Futhermore, the District argues that these developments occurred in only two classes, and urges this Court not to overlook the other classes in which Brian performed no worse than in years past. However, Judge Miller found that this experience had a significant impact on the education

12

provided Brian during his eleventh-grade year, and that such results were more than foreseeable. This Court concurs. Accordingly, this Court agrees with Judge Miller's assessment that the District failed to provide Brian a FAPE during the 2001-02 school year.

  B.  Remedies

In the proceeding below, Judge Miller fashioned a remedy consisting of reimbursement for one year's tuition at the Forman School. In his Opinion, Judge Miller characterized this remedy at times as "reimbursement for the cost of a unilateral placement," (Op. at 83) and at other times as "compensatory education." (Op. at 87.) This Court notes that the two concepts are not interchangeable. As these two remedies differ, this Court must analyze the appropriateness of each separately.

    1.  Reimbursement for Unilateral Placement

The IDEA states that "[i]f the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii). Citing the Supreme Court's decision in Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993), the Third Circuit has held that "a court may award a disabled student the cost of his private placement if (1) the court determines the student's IEP is inappropriate and (2) the student demonstrates that the private placement he seeks is proper." Ridgewood, 172 F.3d at 248. The amount of reimbursement may be subject to equitable

considerations. Id. at 248 n.7.

In reaching his decision, Judge Miller concluded that Brian's IEP was inappropriate because it denied him a FAPE in the eleventh grade. However, he failed to take into account the fact that at the time Brian's parents unilaterally placed him at the Forman School, the District had proposed a separate IEP for Brian's twelfth grade year.

On July 9, 2002, the District provided Plaintiffs with a draft IEP for Brian's twelfth grade year. Eight days later, Brian's parents rejected this IEP and notified the District that they were unilaterally placing Brian at the Forman School. Plaintiffs filed their due process petition on August 1, 2002. On August 5, 2002, the District sent a letter to Brian's parents, requesting that the parties finalize Brian's IEP for the coming school year. Later that month, the District sent Brian's parents an amended IEP. Brian began attending the Forman School in September of 2002.

As is stated above, equitable considerations are appropriate in determining relief containing reimbursement for unilateral placements. In this regard, the efforts of Brian's parents in allowing the District to fashion an appropriate IEP for Brian's twelfth grade year must be taken into account. Unfortunately, the record below is absent any indication that this analysis was undertaken. Further, while the draft IEP for this year is part of the record, Judge Miller's findings are insufficient for this Court to comfortably reach conclusions as to the appropriateness of the proposed IEP and the willingness of both the District and Brian's parents to fashion one which would have provided Brian a FAPE for his twelfth grade year. Accordingly, this Court

will order that this issue be remanded to Judge Miller so that such findings can be made.[2]

If Judge Miller concludes that reimbursement is warranted, in whole or in part, then such reimbursement would be appropriate for both school years that Brian spent at Forman. As the Supreme Court has stated:

> A final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed. In the meantime, the parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement. If they choose the latter course, which conscientious parents who have adequate means and who are reasonably confident of their assessment normally would, it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials. If that were the case, the child's right to a *free* appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete. Because Congress undoubtedly did not intend this result, we are confident that by empowering the court to grant "appropriate" relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case.

Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370 (1985) (emphasis original). If Judge Miller finds Brian's proposed twelfth-grade IEP to not provide a FAPE, these costs borne by Brian's parents prior to his administrative decision, mailed to the parties on March 22, 2004, must be reimbursed by the District, subject to the equitable considerations mentioned above.[3]

Regardless of Judge Miller's finding, Plaintiffs are entitled to the costs of enrolling Brian

---

[2] This Court further notes that it finds no error in Judge Miller's conclusion that a school such as Forman was an appropriate placement, but that residential placement was unnecessary. This Court therefore agrees that reimbursement, if granted, is proper for tuition at Forman, but not for the costs associated with residential placement.

[3] As noted below, however, this Court will award the cost of one year's tuition at Forman as a remedy for compensatory education. Accordingly, the remedy actually provided under this analysis need only cover the cost of tuition for Brian's second year at Forman for the period leading up to March 22, 2004.

at Forman following March 22, 2004, as Forman was then considered to be his "pendent placement." The IDEA includes language known as a "pendant placement" or "stay put" provision, which states that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ." 20 U.S.C. § 1415(j). As Brian's parents unilaterally removed him from OCHS, which was his educational setting under his then-effective IEP, they were initially ineligible for the protections of this provision. See Matthew K. v. Parkland Sch. Dist., No. 97-6636, 1998 U.S. Dist. LEXIS 2024, at *13 (E.D. Pa. Feb. 26, 1998) ("The Third Circuit held that when parents of a disabled child choose to withdraw that child from the proposed public school placement, they do not thereby invoke the protection of the pendent placement provision.") (citing Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996)). However, once Judge Miller found that the District was not providing Brian a FAPE, and subsequently found Forman to be a proper placement, Forman assumed the status of a pendant placement, as the educational agency is said to have agreed with the parents' decision. Id. at 83-84. Accordingly, the District must bear the cost of Brian's enrollment at Forman during the pendency of this subsequent litigation following Judge Miller's decision, regardless of Judge Miller's subsequent findings regarding the District's proposed IEP for Brian's twelfth grade year.

    2.  Compensatory Education

As is stated above, a remedy for compensatory education undergoes a separate analysis from a remedy awarding reimbursement for unilateral placement. The Third Circuit has stated that "[u]nder IDEA, a disabled student is entitled to a free appropriate public education until the

16

student reaches age twenty-one. An award of compensatory education allows a disabled student to continue beyond age twenty-one in order to make up for the earlier deprivation of a free appropriate public education." Ridgewood, 172 F.3d at 249 (citation omitted). The Court went on to hold that such a remedy is appropriate "when the school knows or should know that the student is receiving an inappropriate education." Id. at 250.

      This Court affirms Judge Miller's finding that Brian received an appropriate education at OCHS during the 1999-2000 and 2000-01 school years, but did not receive an appropriate education during the 2001-02 school year. Accordingly, this Court finds that an award of compensatory education is appropriate for this one year.

      In this matter, however, the application of this remedy necessarily overlaps with the remedy offered through reimbursement for Brian's unilateral placement, as one of the two years that Brian spent at Forman amounted to an extra year of secondary education necessary to compensate for the shortcomings of his education at OCHS. Essentially, one of the two years that Brian spent at Forman was expressly compensatory in nature. To hold otherwise would overcompensate Plaintiffs for the shortcomings of the District.

      Plaintiffs ask this Court to fashion an award of compensatory education that goes beyond this additional year at Forman, incorporating an additional report by Barenbaum suggesting that "Brian's skill deficits will impede his academic progress at Dean College even though he made 'remarkable progress' in his two years at the Forman School." (Pls.' Br. at 81.) While this may be true, the District cannot be blamed for nor bear the costs associated with this occurrence beyond the one year in which it failed to provide Brian a FAPE. This Court therefore finds that ordering the District to cover the expense associated with one year of tuition at Forman suffices

in constituting an appropriate compensatory remedy.

So finding, this Court further notes that as one year's tuition will be awarded as a compensatory remedy, the aforementioned remedy for reimbursement will be limited to the second year of Brian's placement at Forman.

### 3. Fees and Costs

"A plaintiff may obtain fees and costs when he 'prevails', or obtains merits-based relief that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Ridgewood, 172 F.3d at 251 (quotation omitted). However, as no record exists as to the costs and fees incurred by Plaintiffs in this litigation, this Court will deny Plaintiffs' request without prejudice. Plaintiffs are invited to file a subsequent motion requesting attorney's fees as authorized by 20 U.S.C. § 1415(i)(3)(B) and a Bill of Costs with the Clerk pursuant to Local Civil Rule 54.1.

## IV. CONCLUSION

Based on the foregoing reasoning, this Court agrees with Judge Miller's finding that the District provided Brian a FAPE during the 1999-2000 and 2000-01 school years, but did not provide him a FAPE during the 2001-02 school year. This Court further finds that Plaintiffs are entitled to one year's tuition, but not residential placement, at the Forman School as a compensatory remedy. This Court further finds that Plaintiffs are entitled to reimbursement for the costs associated with tuition, but not residential placement, paid by Plaintiffs to the Forman School from March 22, 2004 going forward. This Court will further order that the issue of reimbursement for the remaining tuition paid to Forman, essentially that covering the period of

the 2003-04 school year until March 22, 2004, is remanded to Judge Miller for further consideration as set forth in Section III(B)(1) above. Finally, this Court will deny without prejudice Plaintiffs' request for fees and costs.  The accompanying Order shall issue today.


Dated: March 26, 2007               s/ Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge